Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SUGET THOMPSON,

             Plaintiff,

             v.

THE ANTHEM COMPANIES, INC., *et al.*,

             Defendants.

Civil Action No.: 18-06676 (ES) (CLW)

OPINION

**SALAS, DISTRICT JUDGE**

Pending before the Court is a motion for summary judgment filed by Defendants The Anthem Companies, Inc. ("Anthem") and HealthPlus HP, LLC f/k/a Amerigroup New York, LLC ("Amerigroup New York"). (D.E. No. 85). Plaintiff Suget Thompson opposes the motion. (D.E. No. 92 ("Opp.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the motion is **GRANTED**.

## I.    BACKGROUND[1]

### A.    Factual Background

From 2011 to 2016, Plaintiff—a black woman of Guyanese descent—was employed as a Supervisor of Personal Care Services (Opp. at 2–3) by Anthem. (*See also* SMF ¶¶ 1–2 & 61).

---

[1]    The majority of relevant facts are summarized from Defendants' statement of undisputed material facts. (D.E. No. 73-1 ("SMF")). Notably, Plaintiff failed to comply with Local Civil Rule 56.1(a) by failing to submit a counterstatement of material facts. In this instance, the Court could sanction Plaintiff by deeming "[a]ny material fact not disputed [a]s . . . undisputed." L. Civ. R. 56.1(a); *see also Handron v. Sebelius*, 669 F. Supp. 2d 490, 492 (D.N.J. 2009). The Court declines to impose this harsh sanction, however, because it was not "difficult to glean the factual disputes in this case" from the parties' briefing and evidentiary submissions. *See Thompson v. S. Amboy Comprehensive Treatment Ctr.*, No. 18-9923, 2021 WL 3828833, at *1 (D.N.J. Aug. 27, 2021); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that sanctions for noncompliance with Local Civil Rule 56.1 are discretionary).

Plaintiff was responsible for, among other things, developing and monitoring care plans for members of Anthem's health care plans. (SMF ¶ 3; Opp. at 2). Plaintiff's schedule initially allowed her to work from home four days per week and work in the office one day per week. (SMF ¶ 5; Opp. at 2). At some point around September 2013, Anthem's Assistant Director, Sara Lafita, requested that Plaintiff begin working at least three days in the office. (Opp. at 3).

In 2014, Nadine Carter, an African American female, was assigned as Plaintiff's manager. (SMF ¶ 7). On April 17, 2014, Plaintiff emailed Carter that she was overwhelmed with her caseload and asked for a particular vendor to be transferred to one of her colleagues with a lesser caseload. (D.E. No. 92-1, Exhibit ("Ex.") E). Carter denied the request because Plaintiff was a "Team Lead" and should "know the procedure" for the particular request at issue. (*Id.*).

Plaintiff's 2014 performance review, dated February 18, 2015, noted performance concerns, including noncompliance with turnaround times, productivity, and quality complaints. (SMF ¶ 8; D.E. No. 92-1,[2] Ex. C at 15–23).[3] On that same day, Plaintiff asserts, she expressed to Carter that she believed her review had "nothing to do with [Plaintiff's] day-to-day work." (Opp. at 3; D.E. No. 85-3, Ex. 1 ("Thompson Dep.") at 62:1–16). Carter responded, according to Plaintiff, that she "should consider herself privilege[d] to be making mega bucks as [a] 'little Guyanese girl.'" (Opp. at 3; Thompson Dep. at 62:12–16). Carter denies making this comment. (SMF ¶ 79). Plaintiff admits that, while she expressed concerns about her increased workload to HR, she did not specifically report Carter's alleged comment. (SMF ¶ 12; Opp. at 3; Thompson Dep. at 62:17–23 & 136:15–24).

---

[2]     Unless otherwise noted, page numbers referred to for Docket Entry Number 92-1 and Docket Entry Number 85-9, Exhibits 1 and 3 reference those automatically generated by the Court's electronic filing system.

[3]     Plaintiff notes that manager Edith Fick signed the 2014 performance review, while Defendant states that Carter completed the 2014 performance review. (Opp. at 7; D.E. No. 85-1 ("Mov. Br.") at 4). Contrary to Defendant's position, this dispute is not material to the issues before the Court.

In June 2015, Susan Washington, a self-identified mixed-race female from Barbados, assumed the role of Plaintiff's manager. (SMF ¶ 15). In August 2015, Carter was transferred to a different business unit within Anthem, located in Georgia, and was no longer involved with Plaintiff's employment. (*Id.* ¶¶ 13 & 14).

Washington documented concerns with Plaintiff's performance from July through November 2015. (*Id.* ¶¶ 16, 18–22; D.E. No. 85-9, Exs. 1, 2 & 3). On July 31, 2015, Washington met with Plaintiff to discuss specific concerns regarding her job performance. (SMF ¶ 23). On August 17, 2015, Washington met with Plaintiff again to discuss specific concerns regarding her job performance. (*Id.* ¶ 24). That day, Washington informed Plaintiff that she would need to work in the office three days per week, which Plaintiff considered punitive because her peers would not have the same schedule, and she would need to arrange for childcare. (D.E. No. 85-9, Ex. 1 at 4; Opp. at 11).

In the months that followed, Plaintiff did not improve her job performance. (SMF ¶¶ 28–31). On October 15, 2015, Washington discussed with Plaintiff her failure to update her daily log report since August. (*Id.* ¶ 32). On October 21, 2015, Washington issued Plaintiff a written warning identifying specific performance concerns and outlining requirements for immediate improvement. (*Id.* ¶¶ 33–34 & 36). The warning set a corrective action plan in place for the following 90 days and provided that "[i]f at any time during the warning period or thereafter you do not meet the expectations, you do not make sufficient progress toward meeting the stated expectations, or are not able to sustain the improvement, additional corrective action may be taken, up to and including termination of your employment." (D.E. No. 85-9, Ex. 2 at 3). Plaintiff understood that if she did not comply with the written warning, her employment could be terminated. (SMF ¶ 37).

3

Pursuant to the warning, Washington met with Plaintiff weekly to review her compliance. (D.E. No. 92-1, Ex. J ¶ 17; SMF ¶ 38).  Washington, at Plaintiff's request, reduced Plaintiff's caseload.  (SMF ¶ 43).

On November 19, 2015, Washington noted that:

> [i]n regards to her quarterly review, [Plaintiff] stated that she was set up for failure for the past three years in this department.  I asked her why she felt this way and she did not want to elaborate.  She stated that she did not want anything to be held against her or [for it to be] assumed she could not accept constructive criticism.

(D.E. No. 85-9, Ex. 1 at 2; Opp. at 11).  Plaintiff testified that at some point in November 2015, she complained to HR about an alleged hostile work environment, including Lafita and other unspecified individuals "hinting on [Plaintiff's] accent" and asking her "can you repeat that."  (Opp. at 3; Thompson Dep. at 28:25–29:17 & 146:13–25; D.E. No. 92-1, Ex. J ¶ 19).  However, there is no record of Plaintiff's complaint to HR.  (Opp. at 3; Thompson Dep. at 151:3–10; SMF ¶ 78).

Washington documented continued issues with Plaintiff's caseload management into December 2015.  (SMF ¶¶ 39–60).  Plaintiff testified that the concerns brought to her attention "had nothing to do with my job performance.  It was like, oh, . . . a customer call[ed] and said I was rude when I was never rude . . . ."  (Thompson Dep. at 66:3–6).

On January 4, 2016, Anthem terminated Plaintiff's employment.  (Opp. at 3; SMF ¶ 61).

## B.    Procedural History

On December 29, 2017, Plaintiff filed an action in New Jersey Superior Court, Law Division, Middlesex County, alleging three violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.*: for hostile work environment, national origin discrimination, and retaliation.  (D.E. No. 1-1).  On April 13, 2018, Defendants removed the action to federal court.  (D.E. No. 1).  On July 31, 2018, the Court dismissed Plaintiff's original

complaint without prejudice because certain allegations fell outside of the NJLAD's two-year statute of limitations.  (D.E. No. 20 at 6–8).

On August 27, 2018, Plaintiff filed the Amended Complaint.  (D.E. No. 25).  On February 20, 2019, Defendants[4] moved to dismiss the Amended Complaint.  (D.E. No. 47).  On June 7, 2019, the Court dismissed Plaintiff's claim for hostile work environment as time-barred.  (D.E. Nos. 53 & 54).

After the close of discovery, on April 2, 2020, the Honorable Judge Cathy L. Waldor, U.S.M.J., ordered Defendants to submit a pre-summary judgment letter and statement of undisputed material facts, and Plaintiff to submit a pre-summary judgment letter and responsive statement of facts pursuant to Local Civil Rule 56.1.  (D.E. No. 72).  On April 16, 2020, Defendants filed their pre-summary judgment motion letter and statement of undisputed material facts.  (D.E. No. 73).  On May 29, 2020, Plaintiff filed a pre-summary judgment motion letter but not a responsive statement of facts.  (D.E. No. 76).

On November 12, 2021, Defendants filed the instant motion for summary judgment, arguing there is no genuine issue of material fact and they are entitled to judgment as a matter of law on Plaintiff's remaining claims for national origin discrimination and retaliation.  (*See* Mov. Br. at 1–3).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party must first show that no genuine issue of material

---

[4]     On February 11, 2019, the Court dismissed from this action then-defendant Amerigroup New Jersey, Inc. as an improperly joined defendant, thereby preserving diversity jurisdiction.  (D.E. No. 45).  The only remaining Defendants are Anthem and Amerigroup New York.

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is satisfied by "produc[ing] evidence showing the absence of a genuine issue of material fact" or, if the nonmovant bears the burden of proof at trial, by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324.

To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). Rather, the nonmovant "must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2002) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

The Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of an alleged disputed fact is not enough. *Id.* at 247. Rather, the opposing party must prove that there is a genuine dispute of a material fact. *Id.* at 247–48. An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.* at 248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

## III.      DISCUSSION

### A.      National Origin Discrimination

Defendants argue that Plaintiff's national origin discrimination claim fails as a matter of law. (Mov. Br. at 17–29). The Court agrees.

Claims of employment discrimination under the NJLAD are analyzed using the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 788 (3d Cir. 2007). To establish a prima facie case of discrimination at step one, a plaintiff must demonstrate "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016). As to the fourth element, the plaintiff must establish "some casual nexus between" his or her membership in a protected class and the adverse employment action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant-employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007). If the defendant-employer meets this burden, the plaintiff must then prove by a preponderance of evidence that the legitimate

reason provided by the defendant-employer is simply a pretext for discrimination. *Id.*

To show pretext:

> a plaintiff must submit evidence which: (i) casts doubt on the legitimate reason proffered by the employer such that a factfinder could reasonably conclude that the reason was a fabrication; or (ii) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination.

*Id.* at 242.   For example, "the plaintiff may show that the employer has previously discriminated against her, that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998).

The parties do not dispute that Plaintiff satisfies the first, second, and third elements of employment discrimination, and the Court agrees she satisfies those elements.   Plaintiff is of Guyanese descent, was qualified for her position, and was terminated from her employment.   (*See* Mov. Br. at 17 & 18 n.4).   However, Plaintiff fails to establish that the termination gives rise to an inference of unlawful discrimination.

To support an inference of discrimination, Plaintiff relies on her alleged complaint to HR at some point in November 2015, approximately two months before her employment was terminated.   (Opp. at 15).   Plaintiff attempts to support this allegation based on her own deposition and declaration, asserting that she complained to HR about an alleged hostile work environment, including unspecified individuals "hinting on [Plaintiff's] accent" and asking her "can you repeat that."   (*Id.* at 3; Thompson Dep. at 146:13–25; D.E. No. 92-1, Ex. J ¶ 19).   However, neither Plaintiff nor Defendants have any record of this complaint.   (Opp. at 3; Thompson Dep. at 151:3–10; SMF ¶ 78). To the extent that Plaintiff relies on her belief that Lafita and other unspecified

individuals were hostile towards her accent (Opp. at 16), she fails to produce evidence linking their hostility to her nationality.  *See Yahaya v. Maxim Health Care Servs. Inc.*, No. 10-5557, 2012 WL 6203785, at *12 (D.N.J. Dec. 12, 2012) (noting that comments referring to the plaintiff's accent alone do not establish unlawful discrimination on the basis of race or national origin).  Plaintiff concedes that beyond general comments about others not "understand[ing] what [Plaintiff was] saying," no one made a comment linking her accent to her national origin.  (Thompson Dep. at 162:3–19).  In addition, Plaintiff has produced no evidence demonstrating a nexus between remarks regarding her accent and the decision to terminate her employment.  Plaintiff concedes that Washington did not make any comments about her national origin.  (*Id.* at 161:2–4).

Next, Plaintiff relies on Carter's comment allegedly made on February 18, 2015 referring to her as a "little Guyanese girl."  (Opp. at 16).[5]  Even assuming Carter made the alleged comment, which Defendants deny, Plaintiff fails to show a nexus between this remark and the termination of her employment nearly one year later.  As of June 2015, Carter was no longer Plaintiff's manager, and Carter left Plaintiff's office in August 2015, five months before Anthem terminated her employment.  (SMF ¶ 13–15).  Thus, Plaintiff has proffered no evidence suggesting that Carter was involved in the decision to terminate her employment.  "Stray remarks . . . by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."  *Geltzer v. Virtua W. Jersey Health Sys.*, 804 F. Supp. 2d 241, 247 (D.N.J. 2011) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 767 (3d Cir. 1994)).

---

[5]       Defendants assert that Carter's alleged comment is time-barred.   (Mov. Br. at 17–18 n.3).  The Court notes that NJLAD claims are subject to a two-year statute of limitations running from the date of the adverse employment action to the filing of suit.  *Turner-Barnes v. Camden Cnty. Coll.*, No. A-1639-17, 2019 WL 385686, at *4 (N.J. Super. Ct. App. Div. Jan. 31, 2019).  In contrast, evidence offered to support an inference of discriminatory intent as to a timely adverse employment action is not subject to such a time limitation.  *Nat'l R.R. Passenger Corp v. Morgan,* 536 U.S. 101, 102 (2002) (noting the statute does not bar a plaintiff "from using the prior acts as background evidence to support a timely claim.").  Because Plaintiff offers the comment as evidence to support an inference of discriminatory intent as to the termination of her employment, the Court will consider it.

In addition, Plaintiff points to a blank 2015 performance evaluation form to argue that the form "raises some serious concerns" regarding Anthem's employment practices because it is dated January 19, 2018, after Anthem terminated her employment and she filed this action.  (Opp. at 7–9 & 17; D.E. No. 92-1, Ex. D at 26–33).  (Opp. at 17; D.E. No. 92-1, Ex. D at 26–33).  The Court rejects this argument because the blank form fails to demonstrate that Anthem terminated her employment *because* of her national origin; similarly, the post-termination date on the form does not indicate a nexus between her national origin and the termination.  Finally, despite Plaintiff's assertions, Plaintiff fails to show that other employees not in her protected class were treated more favorably beyond her own subjective belief.  (Opp. at 15; Thompson Dep. at 54:9–16 & 201:5–202:20).  Without more, subjective beliefs that an employment decision is discriminatory are insufficient to survive summary judgment.  *See, e.g.*, *Ekhato v. Rite Aid Corp.*, 529 F. App'x 152, 156 (3d Cir. 2013).  Thus, Plaintiff's prima facie national origin discrimination claim fails.

Even if Plaintiff established a prima facie case, Defendants provide legitimate, nondiscriminatory reasons for the termination, as documented since 2014.[6]  (*See* D.E. No. 85-9).  That is, Plaintiff's history of poor work performance is a legitimate, non-discriminatory reason for her termination.  The NJLAD is not to be construed "to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards."  N.J.S.A. § 10:5-2.1; *see also D'Alessandro v. City of Newark*, 454 F. App'x. 53, 56 (3d Cir. 2011) (a long

---

[6]     Plaintiff asserts that there are disputed facts as to Defendants' proffered reasons for the termination of her employment by pointing out that Washington's notes from November 16, 2015, indicate that Plaintiff completed her mandatory time management course, but her notes from November 19, 2015, indicate that Plaintiff had *not* yet completed the course.  (Opp. at 9 (citing D.E. No. 85-9, Ex. 1 at 2 & Ex. 3 at 15)).  At best, Plaintiff invites the Court to speculate as to Washington's intent as it relates to this discrepancy, which just as well may have been an inadvertence.  "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes*, 32 F.3d at 765).  This discrepancy, without more, is not evidence of discriminatory intent.  *See Ridgewood Bd. of Educ.*, 172 F.3d at 252.

history of poor performance is a legitimate, nondiscriminatory reason for terminating an employee); *Casseus v. Elizabeth Gen. Med. Ctr.*, 671 A.2d 176, 181 (N.J. Super. Ct. App. Div. 1996) ("[I]t should require no citation to state that an employee's poor performance in discharging his duties is a legitimate nondiscriminatory reason to fire or demote the employee."); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (noting that courts do not serve as a super-personnel department that reexamines a defendant's business decisions).

Moreover, Plaintiff fails to offer evidence casting doubt on Defendants' reasons for terminating her employment, nor does she demonstrate that discrimination was more likely than not a motivating cause of her termination. *See Johnson*, 214 F. App'x at 242. Plaintiff's mere disagreement with her performance reviews is insufficient to amount to a showing of pretext. *See Valdes v. Union City Bd. of Educ.*, 186 F. App'x 319, 323 (3d Cir. 2006); *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991). Nor is there evidence that Defendants engaged in national origin discrimination by auditing Plaintiff's past caseload after issuing her a warning or by citing her for expired paperwork. (*See* Opp. at 18–20). Indeed, Plaintiff conceded to scoring herself a two out of five in terms of coordination and productivity on her 2015 performance evaluation. (*See* D.E. No. 92-1, Ex. C at 17–18; Thompson Dep. at 42:23–44:14). Because Plaintiff fails to offer any evidence contradicting the performance issues raised by Defendants, she fails to raise a triable issue of fact regarding pretext. *See Maddox v. City of Newark*, 50 F. Supp. 3d 606, 626 (D.N.J. 2014) (concluding that plaintiff's repeated assertions of an unfair caseload failed to "raise a genuine issue of material fact as to her employer's belief that she did not adequately manage her cases," and noting that "[a]t issue here is not workload assignment but workplace *discrimination*").

Therefore, summary judgment is warranted in Defendants' favor on Plaintiff's national origin discrimination claim.

### B.      Retaliation

Defendants argue that Plaintiff's retaliation claim fails as a matter of law.  (Mov. Br. at 29–40).  The Court agrees.

Under the NJLAD, an employer may not retaliate against an employee because that employee "has opposed any practices or acts forbidden under [NJLAD] or because that person has . . . filed a complaint, testified or assisted in any proceeding under [NJLAD]."  N.J.S.A. § 10:5-12(d); *see also Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005).  "To state a prima facie case for retaliation under the NJLAD, a plaintiff must show that she (1) engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action."  *Nuness v. Simon & Schuster, Inc.*, 221 F. Supp. 3d 596, 605 (D.N.J. 2016).  Protected activity may extend beyond the filing of a formal complaint and include "informal protests of discriminatory employment practices."   *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).  To constitute protected activity, the complaint must be specific enough to notify the employer of the type of discrimination at issue.  *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010).  In addition, "the plaintiff bears the burden of proving that his or her original complaint—the one that allegedly triggered his or her employer's retaliation—was made reasonably and in good faith."  *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 530 (N.J. 2007).  "[N]ot every complaint . . . entitles [an employee] to protection from retaliation under the NJLAD.  Rather, only challenges to discrimination prohibited by the NJLAD . . . constitute 'protected activity.'"  *Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 106–07 (3d Cir. 2013) (internal citation omitted).

Plaintiff first relies on her alleged complaint to HR after Carter's February 18, 2015 comment referring to her as a "little Guyanese girl."  (Opp. at 3 & 23–24).  However, while Plaintiff asserts that she expressed concerns about her increased workload and treatment to HR, she maintains that she did not specifically report Carter's alleged comment to HR.  (SMF ¶ 12; Opp. at 3; Thompson Dep. at 62:17–23 & 136:15–24).  Plaintiff next relies on her alleged complaint to HR in November 2015, approximately two months before Anthem terminated her employment, regarding a hostile work environment based on alleged comments about her accent and the way she spoke.  (Opp. at 3 & 26; Thompson Dep. at 146:13–25; D.E. No. 92-1, Ex. J ¶ 19).  However, Plaintiff has not shown that the alleged complaint was based on national origin discrimination (Opp. at 3; Thompson Dep. at 146:13–25), and neither Plaintiff nor Anthem present documentation of any complaint regarding national origin discrimination.  (Opp. at 3; Thompson Dep. at 151:3–10; SMF ¶¶ 78 & 90).  Plaintiff's assertion that another individual "must have told" Washington that she had complained to unspecified persons about national origin discrimination is speculative and is not specific enough to constitute protected activity.  *See Sanchez*, 362 F. App'x at 288.  (*See also* Thompson Dep. at 158:20–159:25).  Thus, the Court finds that Plaintiff has failed to demonstrate that she engaged in protected activity.

Even assuming Plaintiff engaged in a protected activity, her retaliation claim would fail for lack of causation.  "A plaintiff may demonstrate causation by showing: (1) a close temporal relationship between her report and discharge or (2) that the 'proffered evidence, looked at as a whole, raise[s] the inference [of causation]."  *Nuness*, 221 F. Supp. 3d at 606 (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)).

Plaintiff relies on the temporal relationship between her two alleged complaints to HR and the termination of her employment—the first approximately one year before termination and the

second approximately two months before termination.  (Opp. at 26).  But this temporal proximity is remote and does not, without more, give rise to an inference of retaliatory animus.  "When a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity."  *Nuness*, 221 F. Supp. 3d at 606 (quoting *Incorvati v. Best Buy Co.*, *Inc.*, No. 10-1939, 2010 WL 4807062, at *3 (D.N.J. Nov. 16, 2010)); *see also Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (declining to infer causation where over three weeks passed between plaintiff's complaint and termination).

Without close temporal proximity, courts consider the "circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015).  To show retaliatory animus, Plaintiff relies on her increased workload, change in duties, change in remote work status, and general comments about the way she spoke.  (Opp. at 27).  But as explained above, this evidence is insufficient to show discriminatory animus.  For the same reasons, it does not reasonably suggest retaliatory animus.

Finally, as explained above, there is no evidence that the individuals responsible for terminating Plaintiff's employment were aware of the alleged November 2015 complaint regarding Plaintiff's accent.  *See Barroso v. Lidestri Foods, Inc.*, 937 F. Supp. 2d 620, 630 (D.N.J. 2013) (collecting cases).  Plaintiff's speculation that *someone* told Washington about the complaint is not sufficient to infer causation.

Therefore, summary judgment is warranted in Defendants' favor on Plaintiff's retaliation claim.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED**.

An appropriate Order accompanies this Opinion.


**Dated:** June 29, 2022                                        *s/Esther Salas*
                                                      **Esther Salas, U.S.D.J.**